**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO: 09-CV-21321-UNGARO**

JUAN QUERUBIN, VINCENT
MIRIZIO, CHERLY DAVIS,
and ROSA CASTILLA,
individually and on behalf of
all others similarly situated,

   Plaintiffs,

              **CLASS ACTION**

vs.

HEALTHPORT INCORPORATED, and
HEALTHPORT TECHNOLOGIES, LLC.,
Both d/b/a HEALTHPORT,

   Defendant.
_____/

## AMENDED COMPLAINT

   Plaintiffs Juan Querubin ("Mr. Querubin"), Vincent Mirizio ("Mr. Mirizio"),

Cheryl Davis ("Ms. Davis"), and Rosa Castilla ("Ms. Castilla"), individually and on

behalf of all other persons similarly situated, bring this action against HealthPort

Incorporated, and Healthport Technologies, LLC., (collectively "HealthPort") as a class

action.

### I. BACKGROUND FACTS

   1.  This case is brought on behalf of a class of all consumers in the State of

Florida who requested medical records from HealthPort, and who HealthPort charged

unlawful, unfair, and oppressive additional charges to retrieve their documents.

   2.  Defendant HealthPort is in the business of providing document retrieval

services to consumers who request their documents.

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508

3.      In June 2007, HealthPort was formed through the merger of two leading health information companies – Smart Document Solutions and Companion Technologies. In September 2008, HealthPort merged with its biggest competitor in Release-Of-Information ("ROI") called ChartOne. Healthport is now the largest provider of ROI services in the nation, serves over 10,000 hospitals and 27,000 physicians, and has over $260 million in revenue.

4.      HealthPort provides these services by selling a medical document retrieval software, called HealthPort Electronic Medical Record ("EMR"), to hospitals and medical practices.  Consumers, or their authorized agents or attorneys, request documents from their health care provider or sends a request for the documents directly to HealthPort.

5.      HealthPort then remits an invoice for the documents to the consumer, and/or attorney, that requested the medical records.

6.      Fla. Stat. § 395.3025 specifically provides:

> The exclusive charge for copies of patient records may include sales tax and actual postage, and, except for nonpaper records that are subject to a charge not to exceed $2, may not exceed $1 per page.  A fee of up to $1 may be charged for each year of records requested.  These charges shall apply to all records furnished, whether directly from the facility or from a copy service providing these services on behalf of the facility.

7.      Florida law is different from the laws of most other states on this issue. Many other states allow additional charges such as "retrieval fees" and "basic fees."  For example, HealthPort's websites displays copies of statutes from other states, such as Illinois, which permit additional charges such as "retrieval fees" for copies of medical records.

8.      Defendant HealthPort has systematically violated Florida law by charging consumers in Florida additional unlawful charges for copies of medical records such as: (1) a "Basic Fee"; (2) a "Retrieval Fee"; and (3) a "QuickView Delivery Fee."  These additional charges violate Florida law.

9.      Upon information and belief, HealthPort has charged and collected millions of dollars in the form of these additional fees from Florida Class members during the class period.

10.     ChartOne, who merged with HealthPort in 2008, was already sued in a class action for violating a similar deceptive trade law in the District of Columbia by charging additional fees for copies of medical records such as a $25.00 "Clerical Fee."

## II.  PLAINTIFF MR. QUERUBIN

11.     On September 21, 2008, Mr. Querubin was injured in an automobile accident.  Mr. Querubin required fire rescue transport from the scene of the accident to Palm Beach Gardens Medical Center to receive treatment for his injury.

12.     Mr. Querubin retained the services of the law firm of Glinn, Somera, & Silva ("GSS") to represent him in his personal injury claim.

13.     On December 4, 2008 Mr. Querubin, through his attorneys, sent Palm Beach County Fire Rescue a request for his complete itemized bill for Mr. Querubin.

14.     On December 11, 2008, HealthPort retrieved a one page statement from Palm Beach County Fire Rescue for Mr. Querubin's transportation to Palm Beach Gardens Medical Center and delivered it to GSS.

15.     On December 30, 2008, HealthPort delivered an invoice to GSS, charging Mr. Querubin $8.00 for copying this one page.  Exhibit 1.

16.     For the one page document, HealthPort charged Mr. Querubin: (1) a $4.00 Basic Fee; (2) a $1.00 Retrieval Fee; (3) a $1.00 Per Page Copy Fee; and (4) a $2.00 QuickView Delivery Fee.  In total, HealthPort charged Mr. Querubin $8.00 to copy one page of medical records - $7.00 more than the amount allowed by Florida law.

17.     Mr. Querubin reimbursed GSS all of the costs advanced by GSS for his case, including all of the copy costs for the medical records from HealthPort after his case was settled and resolved.

### III.  PLAINTIFF MR. MIRIZIO

18.     On August 29, 2008, Plaintiff Mr. Mirizio was involved in an automobile accident that required immediate transportation to North Broward Medical Center.

19.     Mr. Mirizio retained GSS to represent him in his personal injury lawsuit.

20.     On November 26, 2008, GSS, on behalf of Mr. Mirizio, requested a complete itemized bill from Pompano Beach Fire Rescue for Mr. Mirizio.

21.     On December 4, 2008, HealthPort retrieved a one page statement from the City of Pompano Beach – EMS for Mr. Mirizio's transportation to North Broward Medical Center and delivered it to GSS.

22.     On December 20, 2008, HealthPort delivered an invoice to GSS, charging Mr. Mirizio $8.00 for copying only one page of medical records.  Exhibit 2.

23.     For the one page document, HealthPort charged Mr. Mirizio: (1) a $4.00 Basic Fee; (2) a $1.00 Retrieval Fee; (3) a $1.00 Per Page Copy Fee; and (4) a $2.00 QuickView Delivery Fee.  In total, HealthPort charged Mr. Mirizio $8.00 to copy one page of medical records - $7.00 more than the amount allowed by Florida law.

24. Mr. Mirizio reimbursed GSS all costs advanced by GSS for his case, including all of the copy costs for the medical records from HealthPort after his case was settled and resolved.

## IV. PLAINTIFF MS. DAVIS

25. On March 14, 2005 Ms. Davis suffered a slip and fall accident on the escalator at the Miami airport. As a result of this injury, on December 21, 2005 she underwent extensive back surgery at Parkway Regional Medical Center.[1]

26. Ms. Davis retained GSS to represent her in her personal injury lawsuit.

27. On January 4, 2008, GSS, on behalf of Ms. Davis, requested copies of her complete hospital records from Jackson North Medical Center.

28. On March 21, 2008, HealthPort delivered an invoice to GSS, charging Ms. Davis $47.00[2] for copying only thirty-seven (37) pages of medical records. Exhibit 3.

29. For the thirty-seven page record, HealthPort charged Ms. Davis: (1) a $10.00 Basic Fee; and (2) a $1.00 Per Page Copy Fee. In total, HealthPort charged Ms. Davis $47.00 to copy thirty-seven (37) pages of medical records - $10.00 more than the amount permitted by Florida law.

30. Ms. Davis' personal injury case is ongoing. Although GSS has advanced Ms. Davis' copy costs during the pendency of her case, she will be required to reimburse them after her lawsuit is resolved.

---

[1] Parkway Regional Medical Center subsequently became part of Jackson North Medical Center.

[2] Ms. Davis was actually charged $51.93 for her medical record copies. She was charged $1.99 in shipping and handling and $ 2.94 in sales tax.

## V.    PLAINTIFF MS. CASTILLA

31.    Ms. Castilla suffered a slip and fall accident at the Penn Dutch in Hollywood on December 22, 2008.  Her husband transported her to Northwest Medical Center where she was treated.

32.    Ms. Castilla retained GSS to represent her in her personal injury lawsuit.

33.    On February 24, 2009, GSS, on behalf of Ms. Castilla, requested copies of her complete hospital records from Northwest Medical Center.

34.    On March 6, 2009, HealthPort sent an invoice to GSS, charging Ms. Castilla $24.00 for copying twenty-one (21) pages of medical records.  Exhibit 4.

35.    For the twenty-one (21) page document, HealthPort charged Ms. Castilla: (1) a $1.00 Basic Fee; (2) a $1.00 Per Page Copy Fee; and (3) a $2.00 QuickView Delivery Fee.  In total, HealthPort charged Ms. Castilla $24.00 to copy twenty-one (21) pages of medical records - $3.00 more than the amount permitted by Florida law.

36.    Ms. Castilla's personal injury case is ongoing.  Although GSS has advanced Ms. Castilla's copy costs during the pendency of her case, she will be required to reimburse them after her lawsuit is resolved.

## VI.  PARTIES, JURISDICTION AND VENUE

37.    Plaintiffs Mr. Querubin, Mr. Mirizio, Ms. Davis, and Ms. Castilla are residents of the State of Florida.

38.    Defendant HealthPort Incorporated is a corporation organized under the laws of South Carolina with its principal place of business in South Carolina.  Defendant HealthPort Technologies, LLC is a limited liability company organized under the laws of the State of Georgia, with its principal place of business in Georgia.  Both companies

operate together under the name "HealthPort." HealthPort does business throughout the State of Florida, including specifically in Miami-Dade County.

39.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) (diversity citizenship), 28 U.S.C. § 1332(d) (Class Action Fairness Act), and 28 U.S.C. § 1367 (supplemental jurisdiction).  Jurisdiction is also appropriate in this Court in that Plaintiffs are citizens of the State of Florida, Defendant Healthport Incorporated is a citizen of the State of South Carolina, and Defendant HealthPort Technologies, LLC is a citizen of the State of Georgia, there are 100 or more class members, and the aggregate amount in controversy exceeds $5,000,000.

40.     This Court has jurisdiction over HealthPort because they do business in the State of Florida and intentionally avail themselves of the Florida consumer market.

41.      Venue is proper in this forum because at all times relevant hereto, a substantial portion of the practices complained of herein occurred in the Southern District of Florida and/or because HealthPort has received substantial compensation as a result of doing business in the Southern District of Florida.  Moreover, HealthPort, at all times material to the allegations contained herein, personally and/or through an agent operated, conducted, engaged in and carried on a business venture in the Southern District of Florida and/or engaged in substantial activity within this State and district.

## V.  CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action against Defendant pursuant to Rule 23(a) and b(3) of the Federal Rules of Civil Procedure, and Local Rule 23.1 on behalf of themselves and all other persons similarly situated.  Plaintiffs seek to represent the class.

### a.      Numerosity

43.      The individual Class members are so numerous that joinder of all members is impracticable.  The Class, upon information and belief, consists of thousands of consumers in Florida.  The billing information for each Class member, including the number of pages requested and how much they specifically were charged and paid, is maintained by the Defendants.  The precise number of Class members can only be obtained through discovery but the number is clearly more than 1000 and thus cannot be consolidated in a single complaint.  It would therefore be impractical for each to bring suit individually.

### b.      Commonality

44.      There are questions of law and fact common to the claims of Plaintiffs and members of the Class.  These common questions predominate over any questions that go to any individual member of the Class. Among such common questions of law and fact are the following:

   a.  Whether Defendants charged additional fees for copies of medical records that violate Florida law;

   b.  Whether due to Defendants' acts, as alleged herein, Defendants were unjustly enriched or received payments and/or monies that under principles of equity they cannot retain;

   c.  The proper measure of damages the Class has sustained as a result of the Defendants' wrongful conduct.

### c.      Typicality

45.      Plaintiffs Mr. Querubin, Mr. Mirizio, Ms. Davis, and Ms. Castilla are members of the Class.  They have been charged, and have paid, excessive fees by HealthPort for copies of medical records.  Plaintiffs' claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants.

### d.      Adequacy of Representation

46.      Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed Class members.

47.      To prosecute this case, Plaintiffs have chosen the law firms of Kozyak, Tropin, & Throckmorton P.A.; Glinn, Somera, & Silva; and Searcy, Denney, Scarola, Barnhart & Shipley, P.A.  Collectively these firms are very experienced in class action litigation.  These law firms have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### e.      Requirements of Fed. R. Civ. P. 23(b)(3)

48.      The questions of law or fact common to the claims of Plaintiffs and of each Class member predominate over any questions of law or fact affecting only individual members of the Class.  All claims by Plaintiffs and unnamed Class members are based upon the same unlawful charges for medical records by the Defendants.

49.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there may be some individualized damage determinations.

50.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class, as in this case, common questions will predominate over individual questions.

### f.     Superiority

51.     A class action is superior to thousands of individual actions in part because of the non-exhaustive factors listed below:

a. Joinder of all Class members would create extreme hardship and inconvenience for the affected consumers as they reside all across the State of Florida.

b. Individual claims by the Class members are impractical because the costs to pursue individual claims far exceed the value of what any one Class member has at stake.  As a result, individual Class members have no interest in prosecuting and controlling separate actions.

c. There are no known individual Class members who are interested in individually controlling the prosecution of separate actions.

d. The interests of justice will be well served by resolving the common disputes of potential Class members in one forum.

e. Individual suits would not be cost effective.

f. The action is manageable as a class action; individual lawsuits are not economically maintainable.

## COUNT I

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR
## TRADE PRACTICES ACT

52.     Plaintiffs reallege and incorporate Paragraphs 1 through 37 of this Complaint as if fully set forth herein and further allege as follows:

53.     Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, et seq. ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

54.     The stated purpose of FDUTPA is to protect persons from, "those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

55.     Upon information and belief, the policies, acts, and practices alleged herein were intended to result, and did result, in the payment of millions of dollars. Specifically:

  a.  Defendant engaged in unfair and deceptive practices by over charging consumers for copies of patient medical records contrary to Florida law; and

  b.  Defendant engaged in deceptive practices by charging individuals illegal fees contrary to Florida law.

56.     Plaintiffs and the Class members are persons that have sustained damages as a direct and proximate result of Defendants' unfair and unconscionable practices. Fla. Stat. § 501.211(2) provides Plaintiffs and Class members a private right of action against the Defendants, and entitles the Class to recover their actual damages and injunctive

relief, including an order that Defendants immediately cease and desist this unconscionable practice.

57.     Plaintiffs and the Class members have suffered and will continue to suffer irreparable harm if the Defendants continue to engage in such deceptive and unfair practices.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated individuals, demand judgment against HealthPort for compensatory damages, pre and post judgment interest, attorney's fees, injunctive relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT II

## UNJUST ENRICHMENT

58.     Plaintiffs reallege and incorporate Paragraphs 1 through 37 of this Complaint as if fully set forth herein and further allege as follows.

59.     HealthPort has received, and continues to receive, a benefit at the expense of Plaintiffs and the Class, and has knowledge thereof.

60.     Defendants have deceptively charged, attempted to collect, and continue to collect amounts from consumers in Florida for copies of medical records in violation of Florida law. Accordingly, HealthPort has received benefits that they have unjustly retained at the expense of the members of the Class.

61.     The circumstances are such that it would be inequitable for HealthPort to retain the benefit without paying the value thereof to Plaintiffs and members of the Class.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all other similarly situated individuals, demand judgment against HealthPort for compensatory damages, pre

and post judgment interest, attorney's fees, declaratory relief, costs incurred in bringing this action, and any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on any and all counts for which trial by jury is permitted by law.

Respectfully submitted July 8, 2009.

GLINN SOMERA & SILVA
Paul M. Silva, Esq.
Fla. Bar No. 319820
Peter J. Somera, Esq.
Fla. Bar No. 54267
Somera Silva Building
212 N. Federal Highway
Deerfield Beach, Florida 33441
T: (954) 426-5553 / F: (954) 426-6646

SEARCY DENNEY SCAROLA
 BARNHART & SHIPLEY, PA
John Scarola, Esq.
Fla. Bar No. 169440
2139 Palm Beach Lakes Blvd. 33409-6601
West Palm Beach, Florida
T: (561) 686-6300 / F: (561) 684-5816

Adam M. Moskowitz, Esq.
Florida Bar No. 984280
amm@kttlaw.com
KOZYAK TROPIN &
 THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
T: (305) 372-1800 / F: (305) 372-3508

/s/Adam M. Moskowitz

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF  on July 8, 2009  and was filed with the Clerk of the Court using CM/ECF.

/s/Adam M. Moskowitz