UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-cv-21321-UU

JUAN QUERUBIN, VINCENT
MIRIZIO, CHERLY DAVIS,
and ROSA CASTILLA, individually and on
behalf of all others similarly
situated,

     Plaintiffs,
v.
HEALTHPORT INCORPORATED and
HEALTHPORT TECHNOLOGIES, LLC,
Both d/b/a HEALTHPORT,

     Defendants.
_____

**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT**
_____

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, HealthPort, LLC (incorrectly named as "HealthPort, Inc.") and HealthPort Technologies, LLC, move to dismiss the Amended Complaint on the ground that Plaintiffs have failed to state a claim for which relief can be granted, as more particularly set forth below.

## INTRODUCTION

Defendant HealthPort Technologies, LLC ("HealthPort") provides document retrieval services for physicians, hospitals and other entities. This case was originally filed by two plaintiffs who alleged that HealthPort "overcharged" them under Florida law for copies of ambulance bills requested from emergency service providers. Defendants filed a Motion to Dismiss, pointing out, among other things, that the statute cited by the

original Plaintiffs, Fla. Stat. § 395.3025, on its face does not even apply to such transactions.  Before a response to the Motion to Dismiss was due, Plaintiffs filed an Amended Complaint, restating the original claims and adding two new Plaintiffs.  Unlike the original Plaintiffs, the new Plaintiffs had at least ordered patient medical records from providers ostensibly subject to the statute in question.  However, Plaintiffs' Amended Complaint is still fatally defective and must be dismissed as a matter of law.

The two original Plaintiffs make the same substantive allegations in the Amended Complaint and they still fail to state a cause of action.  These Plaintiffs (Juan Querubin and Vincent Mirizio) requested copies of ambulance bills from emergency medical service providers.  Although Querubin and Mirizio allege that they were overcharged for these copies under Fla. Stat. § 395.3025, that statute does not regulate what may be charged for copies ordered from emergency medical service providers.  Rather, the law regulates only what may be charged for copies requested from "licensed providers," as specifically defined in Fla. Stat. § 395.002(16).  The statutory definition does not include emergency medical service providers such as the ambulance services contacted by Querubin and Mirizio.  Moreover, bills for ambulance transport are not "patient records" under Florida law and are therefore not subject to copying charge regulation even if they are furnished by an entity covered by the statute.  In sum, the claims of Querubin and Mirizio in the Amended Complaint remain facially deficient and must be dismissed as a matter of law.

The claims of the new Plaintiffs, Cherly [sic] Davis[1] and Rosa Castilla, similarly lack merit.  Davis and Castilla allege that they ordered copies of their medical records from two hospitals.  Unlike emergency medical service providers, hospitals are in fact covered by Fla. Stat. § 395.3025.  However, the Amended Complaint reflects a total misunderstanding of what the statute actually says.  Plaintiffs repeatedly and erroneously claim that Fla. Stat. § 395.3025 limits charges for copies of medical records to $1.00 per page.  *See* Amended Complaint, ¶¶ 29, 35, 23 and 16 (asserting that charges in excess of $1.00 per page were "more than the amount allowed by Florida law").  But the very portion of the statute quoted by Plaintiffs in their Amended Complaint authorizes additional charges, which Plaintiffs otherwise fail to acknowledge or address.  *See* Amended Complaint ¶ 6.  Specifically, § 395.3025 expressly provides that, <u>in addition to</u> the fee of $1.00 per page, providers may charge sales tax, postage, a fee of up to $2 a page for nonpaper records and also that "<u>a fee of up to $1 may be charged for each year of records requested</u>." (emphasis added)

As is evident from the exhibits filed with the Amended Complaint, Davis and Castilla were charged fees of $1.00 per year of records searched, which fees were expressly authorized by the very statute quoted by the Plaintiffs in their Amended Complaint.  Yet Plaintiffs have sued HealthPort, making the specious claim that these expressly-authorized fees were somehow "unlawful."  Furthermore, Plaintiff Davis affirmatively elected to request an optional service offered by HealthPort through which her records were provided by email in an electronic format.  For this separate service— transmitting records electronically—Davis was charged a $2.00 fee.  Florida law does

---

[1] Plaintiff is identified in the caption of the Amended Complaint as "Cherly Davis."  However, a review of the materials filed with the Amended Complaint and the text of the Amended Complaint suggests that her name is actually "Cheryl Davis."

not regulate this additional, optional service, which Davis agreed in writing would be in addition to the statutory rates.

Finally, the claims of all four plaintiffs, although styled as actions under the Consumer Protection Act, are nothing more than an effort to create a private right of action under Fla. Stat. § 395.3025. This flies in the face of he Florida Legislature's express direction that Fla. Stat. § 395.3025 "shall not be construed to create or be the basis of a civil action."

For all of these reasons, as more fully set forth below, Plaintiffs' claims should be dismissed as a matter of law.

## PERTINENT FACTUAL ALLEGATIONS

The Plaintiffs make the following allegations in the Amended Complaint:

HealthPort provides document retrieval services to hospitals and physicians. Amended Complaint ¶ 2. In addition, HealthPort provides document retrieval services to emergency medical service providers.[2] Amended Complaint, ¶ 13, Exs. 1 and 2.

Plaintiff Juan Querubin was injured in an automobile accident on September 21, 2008 and was transported by ambulance to Palm Beach Gardens Medical Center. Amended Complaint ¶ 11. On December 4, 2008, a lawyer representing Querubin sent a letter to Palm Beach County Fire Rescue. Amended Complaint, Ex. 1. The letter stated in pertinent part as follows: "Please allow this letter to serve as our request for your **COMPLETE ITEMIZED BILL** for the above-captioned patient….I have attached appropriate authorization for your file." *Id.* (emphasis in original) A standard HIPAA release form signed by Querubin was attached to the request. A copy of Palm Beach

---

[2] Plaintiffs' description of HealthPort's business and the way medical record requests are processed is incorrect. However, these errors are not material to the present Motion to Dismiss.

County Fire Rescue's bill (in the amount of $478.50) was duly furnished to Querubin's attorney, along with an invoice from HealthPort for $8.00.  *Id.*

On August 29, 2008, Plaintiff Vincent Mirizio was involved in an automobile accident that required transportation to North Broward Medical Center.  Amended Complaint, ¶ 18.  On November 26, 2008, a lawyer representing Mirizio sent a letter to Pompano Beach Fire Rescue.  Amended Complaint, Ex. 2.  This letter stated in pertinent part as follows:  "[T]his letter will serve as our request for your complete itemized bill for the above-captioned patient.  Please send the bill via return fax….I have attached Vincent Mirizio's authorization for your file."  A standard HIPAA release form was attached.  A copy of Mirizio's ambulance bill (in the amount of $800) was subsequently furnished, along with HealthPort's invoice in the amount of  $8.00.  *Id.*[3]

On January 4, 2008, a lawyer representing Plaintiff Cheryl Davis sent a letter to the Jackson North Medical Center, a hospital.  Amended Complaint, Ex. 3.  (Docket Entry No. 17-4 at 4).  In this letter, Davis's attorney requested copies of her "complete hospital records, including but not limited to:  all emergency room records, triage log, admission/discharge summaries, doctors' orders and reports, all EKG and rhythm strips….video tapes, X-rays, bills, etc."  *Id.*  The records request did not reference any particular date of service, but rather on the subject line of the letter stated as follows: "Date of Service:  Any and All."  Copies of Davis' medical records were subsequently furnished along with HealthPort's invoice for $51.93, which consisted of a $10.00 "Basic

---

[3] Plaintiffs suggest that the requests at issue were submitted directly to HealthPort and further that the requests were for copies of Plaintiff's "entire file for 'all medical treatment rendered.'"  Amended Complaint ¶s 15, 22 (quoting language from HIPAA authorization attached to bill requests)  Both of these allegations are contradicted by the documents that Plaintiffs attach to their Amended Complaint, which plainly show that the requests were submitted directly to the ambulance services and requested **only** copies of the ambulance bills.  In any event, it is undisputed that the ambulance bills were the only documents produced in response to Plaintiffs' requests and the only documents for which copying charges were billed. Amended Complaint, ¶ ¶ 11, 20, Exs. 1 and 2.

Fee," $37.00 for copying 37 pages of medical records, $1.99 in shipping and handling and sales tax of $2.94.  *See* Amended Complaint, ¶29;  Ex. 3 (Docket Entry No. 17-4 at 2).

On December 22, 2008, Plaintiff Rosa Castilla slipped and fell.  Amended Complaint, ¶31.  On February 24, 2009, an attorney representing Castilla sent a letter to Northwest Medical Center requesting Castilla's medical records for December 22, 2008. Amended Complaint, ¶34; Ex. 4 (Docket Entry No. 17-5 at 5).  Copies of Castilla's medical records were subsequently furnished along with HealthPort's invoice for $24.00 which consisted of a $1.00 "Basic Fee," $21.00 for copying 21 pages of medical records, and a "QuickView Delivery" Fee of $2.00.  Amended Complaint, ¶35.  The $2.00 QuickView Delivery Fee was in accordance with the October 28, 2005 contract between Castilla's attorneys, Glinn Somera & Silva, and HealthPort.  *See* **Exhibit 1** attached hereto and footnote 5, *infra*.  In the contract, Castilla's attorneys requested HealthPort to provide medical records electronically in exchange for a fee of $2.00 per request.  The contracts specifically provided that the $2.00 fee for the optional electronic service was "in addition to state legislated release-of-information rates, if any".  *See* Ex. 1 to Motion.

Based on what they allege were violations of Fla. Stat. § 395.3025, all Plaintiffs assert claims for:  (1) alleged violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* (the "Consumer Protection Act") and (2) unjust enrichment.  Plaintiffs further seek certification as representatives of a class of similarly-situated consumers in Florida.

## LAW AND ARGUMENT

**I.  A Case That Does Not Set Forth a Viable Cause of Action Should be Dismissed Under Fed. R. Civ. P. 12(b)(6).**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief…."  A complaint must contain "more than labels and conclusions," and instead must set forth factual allegations sufficient "to raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1956 (2007).  The factual allegations in a complaint must "plausibly suggest" a violation of the law.  *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008).

A complaint that fails to set forth a viable cause of action should be dismissed pursuant to Rule 12(b)(6).  *See Solomon v. Blue Cross and BlueShield Assoc.*, 574 F.Supp. 1288 (S.D. Fla. 2008); *Davis v. HSBC* Bank, 2009 WL 0472 (S.D. Fla. May 20, 2009).  A court may grant a motion to dismiss when "on the basis of a dispositive issue of law, no construction of the factual allegations will support a cause of action." *Marshall Cty Bd. of Educ. v. Marshall Cty. Gas Dist.*, 922 F.2d 1171, 1174 (11th Cir. 1993).

Seeking certification as representatives of an alleged class does not save Plaintiff's claims from being dismissed on the merits if the Complaint fails to state a cause of action.  "It [is] within the court's discretion to consider the merits of the claims before their amenability to class certification….With no meritorious claims, certification of those claims as a class action is moot." *Telfair v. First Union Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000).  *See also Rink v. Cheminova*, 400 F.3d 1286, 1297 (11th Cir. 2005); *In re Alcantara*, 389 B.R. 270, 274 (Bkrptcy. M.D. Fla. 2008).

## II. The Claims of Querubin and Mirizio Fail To State A Claim For Which Relief May Be Granted.

### A. Fla. Statute § 395.3025 does not apply to emergency service providers.

The original Plaintiffs' claims must be dismissed for a very simple reason: the statute upon which the claims are based does not apply to the facts as alleged. These Plaintiffs' allegations of "overcharging" rely on Fla. Stat. § 395.3025. That statute provides in pertinent part as follows:

> **Any licensed facility shall**, upon written request, and only after discharge of the patient, **furnish**, in a timely manner, without delays for legal review, to any person admitted therein for care and treatment or treated thereat, or to any such person's guardian, curator, or personal representative, or in the absence of one of those persons, to the next of kin of a decedent or the parent of a minor, or to anyone designated by such person in writing, **a true and correct copy of all patient records**, including X rays, and insurance information concerning such person, which records are in the possession of the licensed facility, provided the person requesting such records agrees to pay a charge. **The exclusive charge for copies of patient records** may include sales tax and actual postage, and, except for nonpaper records that are subject to a charge not to exceed $2, may not exceed $1 per page. A fee of up to $1 may be charged for each year of records requested. These charges shall apply to all records furnished, whether directly from the facility or from a copy service providing these services on behalf of the facility…..

(emphasis added). By its plain terms, Fla. Stat. § 395.3025 only applies to "licensed facilities" providing "patient records." "Licensed facilities" is a defined term within Chapter 395 of the Florida Statutes; a "licensed facility" is "a **hospital, ambulatory surgical center, or mobile surgical facility** licensed in accordance with this chapter." Fla. Stat. § 395.002(16) (emphasis added). [4]

---

[4] Among other requirements, a "hospital" is a facility providing care to patients for more than 24 hours. Fla Stat. § 395.002(12).  An "ambulatory surgical center" or "mobile surgical facility" is defined in pertinent part as "a facility the primary purpose of which is to provide elective surgical care…." Fla. Stat. § 395.002(3).  An emergency medical service provider does not fall within either definition.

6158406                                   8

The Plaintiffs in the present case requested and received copies of their "itemized bills" from two emergency medical service providers, Palm Beach County Fire Rescue and the Pompano Beach Fire Rescue.  Amended Complaint, Exs. 1 and 2.  An emergency medical service provider is not a "hospital, ambulatory surgical center, or mobile surgical facility…." and therefore is not a "licensed facility" within the terms of the record retrieval statute. In fact, providers of emergency medical services are regulated by a completely different statute, the Raymond H. Alexander, M.D. Emergency Medical Transportation Services Act, Fla. Stat. §§ 401.2101 *et seq.*  This statute directs what type of patient records must be maintained by emergency providers, Fla. Stat. § 401.30, but does **not** dictate what may be charged for retrieval of those records or for any billing information related to the patient records.

As a matter of law, therefore, the fees charged to the Plaintiffs were not "excessive" or "unlawful," because the statute cited by the Plaintiffs does not apply to the records for which the Plaintiffs were charged.  Accordingly, this case should be dismissed for failure to state a claim upon which relief may be granted.

**B.**   **The "itemized bills" requested by and furnished to Querubin and Mirizio are not "patient records" within the meaning of Fla. Stat. §395.3025.**

As set forth above, Fla Stat. § 395.3025 applies only to "licensed facilities" and not to the providers of emergency medical services.  Should the Court conclude otherwise, however, the claims of Querubin and Mirizio still fail.  These Plaintiffs did not request copies of patient records (which, if furnished by a "licensed facility" would be subject to the records statute).  Rather, the letter sent by counsel for Plaintiffs to the two emergency medical service providers requested a "complete itemized **bill**" Exs. 1 and 2 (emphasis added).  This is an important distinction.

Fla Stat. § 395.3025 governs what a "licensed facility" may charge for "**patient records**, including X rays, and insurance information concerning such person, which records are in the possession of the licensed facility…." Chapter 395 further specifically defines the meaning of "patient records":

> Patient records; form and content.--Each hospital operated by the agency or by the Department of Corrections shall require the use of a system of **problem-oriented medical records for its patients, which system shall include the following elements: basic client data collection; a listing of the patient's problems; the initial plan with diagnostic and therapeutic orders as appropriate for each problem identified; and progress notes, including a discharge summary**. The agency shall, by rule, establish criteria for such problem-oriented medical record systems in order to ensure comparability among facilities and to facilitate the compilation of statewide statistics.

Fla. Stat. § 395.3015 (emphasis added). This statutory definition does not include bills of the sort requested and received by the original Plaintiffs. *See* Exs. 1 and 2. The bills attached to the Amended Complaint do not contain information such as "a listing of the patient's problems" or other substantive information about the medical care and treatment of the Plaintiffs. Rather, Plaintiffs' ambulance bills are simply invoices for transport from accident scenes to medical facilities.

Therefore, even if Fla. Stat. § 395.3025 somehow applies to entities that are not "licensed facilities," even with respect to those entities the law only applies to requests for "patient records" and not itemized bills such as those attached to the Amended Complaint. Accordingly, the claims of Querubin and Mirizio should be dismissed.

### III. The Claims of Davis and Castilla Fail To State A Claim For Which Relief May Be Granted.

**A.   Fla Stat. § 395.3025 expressly and clearly authorizes the fees that Davis and Castilla assert are "unlawful" and "illegal."**

.

Throughout the Amended Complaint, Plaintiffs incorrectly assert that Florida law limits charges for patient medical records to $1.00 per page.  *See, e.g.,* Amended Complaint at ¶¶ 16, 23, 29 and 35.  However, Fla. Stat. § 395.3025 actually provides as follows:

> The exclusive charge for copies for patient records may include sales tax and actual postage, and, except for nonpaper records that are subject to a charge not to exceed $2, may not exceed $1 per page.  **A fee of up to $1 may be charged for each year of records requested.**

(emphasis added).  Although Plaintiffs accurately quote the statute in Paragraph 6 of the Amended Complaint, they completely fail to address the fact that medical record providers are entitled to charge $1.00 "for each year of records requested."  A careful review of the materials filed with the Amended Complaint reveals that Plaintiffs have sued HealthPort for the  imposition of these charges. Not only are the charges not "unlawful," they are expressly authorized by the very statute quoted by Plaintiffs.

Plaintiff Castilla requested records for a particular date of service in one year, 2008.  Amended Complaint, Ex. 4.  In addition to the $1.00 per page charge, therefore, Castilla was charged a "Basic Fee" of $1.00.  On its face and as a matter of law, the Basic Fee charge was entirely consistent with the provisions of Fla. Stat. §395.3025, which authorizes a charge of $1.00 for each year of records searched.  Inexplicably, Castilla claims that this $1.00 fee was "illegal" even though the statute (as quoted in Paragraph 6 of the Amended Complaint)  plainly states to the contrary.

Plaintiff Davis also claims that her "Basic Fee" of $10.00 was unlawful. However, in her allegations she fails even to address the terms of the statute permitting a charge of $1.00 for each year searched. Davis's attorney wrote to Jackson North Medical Center and requested medical records for "<u>any and all</u>" dates of service. (Amended Complaint, Ex. 3)  Under Florida law, HealthPort was entitled to charge $1.00 for each year of medical records searched; $10.00 would be the appropriate fee for searching 10 years of medical records. The Amended Complaint contains no allegation that fewer than 10 years of records were searched. To the contrary, Davis's claim rests entirely on the false notion that record providers are limited to a charge of only $1.00 per page.

As a matter of law, the mere fact that a patient is charged more than $1.00 per page does not state a claim, in light of the fact that Florida law authorizes an additional charge of $1.00 for each year requested and in light of the fact that Plaintiff Davis requested medical records, not for any one date of service, but for "any and all" dates of service. Davis does not allege that HealthPort searched fewer than 10 years of records, because there is no good faith basis for such a claim. Instead, the Amended Complaint is totally silent about the $1.00 per year provision contained in the statute. The claims of Davis should be dismissed for failure to state a claim.

**B.    <u>Plaintiff Castilla's attorneys elected to receive medical records electronically and agreed to pay a $2.00 fee for that optional and additional service—a fee Castilla now claims was "illegal" even though electronic delivery of medical records is not addressed by any statute</u>.**

In addition to a $21.00 charge for 21 pages of medical records and a $1.00 charge for searching for records from one year (2008), Plaintiff Castilla was charged a "Quickview Delivery Fee" of $2.00. Plaintiffs assert this was an "unlawful" and "illegal"

charge. This allegation is based on the incorrect assumption that Castilla was charged the $2.00 fee to obtain a copy of her medical records. She was not. Castilla was charged $2.00 because her law firm had voluntarily enrolled to receive an additional service—the electronic transmission of medical records. There is no statute regulating the price that may be charged for such a service.

On October 22, 2008, Glinn Somera & Silva, the law firm representing Castilla, enrolled as members of a service known as "Health Port Connect" by filling out a written agreement and submitting it to HealthPort. The agreement is attached hereto as **Exhibit 1**[5]. Under this agreement, HealthPort provides an electronic non-paper delivery service of clients of the law firm at a charge of $2.00. In addition, this electronic or e-mail patient record delivery service is not regulated by Fla. Stat. §395.3025 because the statute only governs paper and nonpaper copies (such as x-rays) of medical records, not the electronic transmission of patient records. Moreover, in executing the agreement, Castilla's attorneys expressly acknowledged that the $2.00 charge was "<u>in addition to</u> state legislated release-of-information rates…" (Emphasis added). Castilla could have elected to have received her medical records in paper format, in which case she would not have been charged the $2.00 Quick Delivery Fee. However, Fla. Stat. §395.3025 simply does not regulate or restrict the ability of medical record providers to offer <u>optional, additional</u> services such as the electronic delivery of medical records..

---

[5] Where, as here, documents of unquestioned authenticity are relied on or are integral to a complaint, the Court properly may consider them on a Rule 12(b)(6) motion even thought they were not appended to the Complaint. *Financial Sec. Assoc., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007); *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Plaintiff cannot reasonably dispute that her law firm entered into this agreement. Among other indicia, the name and address of the law firm and its domain name (www.servingthepeople.com) appear on the agreement. The document is clearly integral to the allegations of the Amended Complaint as Plaintiffs have based their lawsuit in part on the premise that the $2.00 fee set forth in the HealthPort Connect Agreement is "unlawful."

### IV. The Florida Legislature Expressly Precluded a Private Right of Action Under Fla. Stat. § 395.3025

In connection with amendments to the Hospital Licensing and Regulation statutes in 2004, the Florida Legislature adopted the following amendment note to Fla. Stat. § 395.3025: "Nothing in this act shall be construed to **create or be the basis of** a civil action." (emphasis added) Yet it cannot reasonably be disputed that all of the Plaintiffs' claims are directly based upon Fla. Stat. § 395.3025. Absent the statute, there simply is no basis for a claim that Plaintiffs were "unlawfully overcharged." The present lawsuit is nothing more than an attempt to circumvent the intent of the Legislature that the statute should not be used as "the basis of" a civil action.

Under Florida law, the intent of the Legislature is the key to determining whether a regulatory statute establishes a private right of action. *Villazon v. Prudential Health Care* Plan, 843 So.2d 842, 852 (Fla. 2003); *Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985 (Fla. 1994). As the Florida Supreme Court stated in *Murthy,* "legislative intent, rather than the duty to benefit a class of individuals, should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." *Id.* In all cases, the intent of the Legislature is paramount in assessing whether a private right of action may be maintained under a Florida statute. Here, the Legislature has **expressly** provided that Fla. Stat. § 395.3025 was not intended to create a private right of action **or** to serve as the **basis** of a private action.

Plaintiffs seek to avoid this clear expression of legislative intent by styling their complaint as being brought under the Consumer Protection Act and as a common law claim of unjust enrichment. This amounts to nothing more than an end run around the unequivocal directive of the Florida Legislature. Unquestionably, Fla. Stat. § 395.3025 is "the basis of" the present case. Because the Florida Legislature has precluded a private right of action under that statute, Plaintiffs' claims must fail.

## CONCLUSION

Defendants respectfully urge this Court to dismiss the Amended Complaint in its entirety on the basis that it fails to state a claim for which relief may be granted.

Respectfully submitted,

*/s/ LAWRENCE J. ROBERTS*
Lawrence J. Roberts
Florida Bar No.: 343218
Email: lroberts@lrobertsandassociates.com
**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Defendants
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883

Kenneth M. Bryant
Tenn. Bar No. 12582
Email: kbryant@millermartin.com
G. Brian Jackson
Tenn. Bar No. 15497
Email: bjackson@millermartin.com
**MILLER & MARTIN PLLC**
1200 One Nashville Place
150 Fourth Avenue, North
Nashville, TN 37219
Phone (615) 744-8508
Fax (615) 744-8608
(Appearing *Pro Hac Vice*)

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 14th, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Respectfully submitted,

*/s/ LAWRENCE J. ROBERTS*
Lawrence J. Roberts
Florida Bar No.: 343218
Email: lroberts@lrobertsandassociates.com
**Lawrence J. Roberts & Associates, P.A.**
Attorneys for Defendants
249 Catalonia Avenue
Coral Gables, Florida 33134
Phone: (305) 441-7882
Fax: (305) 441-7883

## SERVICE LIST

**Juan Querubin and Vincent Mirizio v. HealthPort Incorporated and HealthPort Technologies, LLC both d/b/a HealthPort**

**CASE NO. 1:09-cv-21321-UU**
**United States District Court, Southern District of Florida**

**Notice will be electronically mailed to:**

Adam M. Moskowitz, Esquire
Email: amm@kttlaw.com
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: (305) 372-1800
Fax: (305) 372-3508

*Counsel for Plaintiffs*

6158406                                16

Paul M. Silva, Esquire
Email: paul@servingthepeople.com
Peter J. Somera, Esquire
GLINN SOMERA & SILVA
212 N. Federal Highway
Deerfield Beach, Florida 33441
Tel.: (954) 426-5553
Fax: (954) 426-6646

*Counsel for Plaintiffs*


John Scarola, Esquire
Email: mep@searcylaw.com
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.
2139 Palm Beach Lakes Blvd.
West Palm Beach Florida 33409-6601
Tel.: (561) 686-6300
Fax: (561) 684-5816

*Counsel for Plaintiffs*
.