**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

JUAN QUERUBIN, VINCENT
MIRIZIO, CHERYL DAVIS, and
ROSA CASTILLA, individually
and on behalf of all others                                **CASE NO:  09-CV-21321-UNGARO**
similarly situated,

Plaintiffs,
                                                                          **CLASS ACTION**

vs.

HEALTHPORT INCORPORATED, and
HEALTHPORT TECHNOLOGIES, LLC.,
Both d/b/a HEALTHPORT,

            Defendant.
_____/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT AND**
**INCORPORATED MEMORANDUM OF LAW**

Plaintiffs Juan Querubin ("Mr. Querubin"), Vincent Mirizio ("Mr. Mirizio"), Cheryl

Davis ("Ms. Davis"), and Rosa Castilla ("Rosa Castilla") filed the instant action to recover

against Defendants Healthport Incorporated and Healthport Technologies, LLC (collectively

"Healthport") for unlawful, unfair, and excessive charges for copies of patient medical records.

Plaintiffs assert causes of action against Healthport under the Florida Deceptive and

Unfair Trade Practice Act ("FDUPTA") and Unjust Enrichment on behalf of themselves and a

proposed class of all Florida consumers.

This case is about a company who has been repeatedly sued for overcharging consumers

for copies of their patient medical records, settled each litigation, and still failed to change its

Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor, Miami, Florida 33134 Phone 305.372.1800 Fax 305.372.3508

Case No. 09-21321-Civ-Ungaro/Simonton

business practices to conform with the law.[1]  Despite the fact that Florida law clearly and unequivocally limits the permissible per-page charge for copies of patient medical records to $1.00, the Defendants continue to systematically charge consumers fees that far exceed the amount permitted by law.  Now, Defendants move to dismiss the Plaintiffs' claims arguing generally that consumers have no remedy for the Defendants' blatantly unlawful conduct. Healthport's motion is meritless.

## I.   BRIEF BACKGROUND

In order to prevent price gouging of consumers who require copies of their medical records for consumer purposes, most states have passed their own specific statutes limiting the permissible costs for copying medical records.  Almost all of these statutes vary in terms of the specific amount and types of charges that are allowed.  Florida Statue § 395.3025 is one the strictest in the country.  In 1992, the Florida legislature revised Chapter 395 so that there is now an "exclusive" copying charge of $1 per page.  *Hospital Correspondence Corp v. McRae*, 682 So. 2d 1177, 1179, 1182 (Fla. 5th DCA 1996) (class certified of consumers who were all charged

---

[1]  As more comprehensively set out in the Plaintiffs' Response to the Defendants' Second Renewed Motion to Stay, through a preliminary review of the available pleadings and discussions with counsel in various cases, undersigned counsel has been informed that numerous class actions have been filed in at least three different states against ChartOne, a company HealthPort recently merged with.  These class actions all settled after the courts rejected the defenses raised by defendants.  Many of these rejected defenses are either similar or identical to the defenses raised by Healthport in this case.  *See e.g. Raglon v. ChartOne*, No. CV-06-276-1, slip op. at 13-15 (Ark. Cir. Ct. Am. Compl. July 5, 2007), Exhibit A; *Lavoie v. ChartOne*, Case No. 00-1625-CA-G, slip op. at 2 (Fla. Cir. Ct. Apr. 3, 2007), Exhibit B; *Reece v. ChartOne*, No. GIC864155, slip op. at 6 (Cal. Sup. Ct. Apr. 28, 2008), Exhibit C.  The Plaintiffs are currently attempting to gain more information about these lawsuits both through propounding appropriate discovery, and also through publicly available sources.

Case No. 09-21321-Civ-Ungaro/Simonton

in excess of $1 per page for medical records).[2] "[T]he charge limitation is applicable not only to licensed medical facilities in possession of the records, but copying services as well." *Id.* at 1180. Under Florida law, postage and sales tax are among the very few charges allowed in addition to the $1.00 per page limit. *See* Florida Attorney General Advisory Legal Opinion. March 13, 2001 at Exhibit D.

Over the course of time, Healthport has become the largest perpetrator of exactly what these medical records statutes were designed to protect. Healthport is the largest provider of medical copies in the country, and has over $260 million in revenue, mostly at the expense of consumers. (Amended Compl. ¶3) On its website page under the heading "legislation," Healthport touts how it complies with state regulations and identifies a few different state copy statutes which permit additional charges such as "retrieval fees," which are not permitted under Florida law. (*Id.* ¶7) Healthport has simply failed to keep up with the current law in the State of Florida both under Fla. Stat. § 395.3025, and the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.204, and as a result has engaged in the systematic exploitation of Florida consumers by charging patently unreasonable fees for copies of their patient medical records.

---

[2] Additionally, in 2005, a class action was filed in the District of Columbia for medical record overcharges against ChartOne, a company HealthPort recently merged with in 2008 (Amended Compl. ¶3). *Ford v. ChartOne, Inc.*, 908 A.2d 72 (2006). In *Ford*, the trial court denied certification and granted summary judgment for the copy company. The Plaintiff based his lawsuit solely upon the District of Columbia's business deceptive trade law arguing that ChartOne charged much less for copies in the surrounding states. The trial court denied certification based, in large part, on the difficulty of certifying the case under the "unconscionable" requirement of the deceptive trade law because unlike Florida, DC did not have a specific law that limited the copy price per page. The appeals court reversed, finding that the certification factors were met. *Id.*

Case No. 09-21321-Civ-Ungaro/Simonton

## II. <u>FACTUAL ALLEGATIONS</u>

As alleged in the Amended Complaint, Defendants are in the business of providing document retrieval services to consumers who request their patient medical records.  (Amended Compl. ¶ 2).  Patient/consumers wishing to obtain copies of their patient medical records request these documents from their healthcare provider.[3]  (*Id.* ¶ 4) Healthport then retrieves and copies the documents and sends the patient/consumer an invoice.  Florida law statutorily limits the maximum charge per page for copies of medical records to $1.00.  (*Id.* ¶6)  In this respect Florida law is different from the law in other states, which permit additional charges such as "retrieval fees" and "basic fees" under certain circumstances.  (*Id.* ¶ 7)

Mr. Querubin and Mr. Mirizio both suffered injuries in car accidents that required emergency transport from the scene of the accident to Palm Beach Gardens Medical Center and North Broward Medical Center, respectively.  (*Id.* ¶¶11,18)  Mr. Querubin, through his attorneys, requested a copy of his complete itemized medical bill[4] from Palm Beach County Fire Rescue, (*Id.* ¶13) and Mr. Mirizio, also through his attorney, requested a similar bill from Pompano Beach Fire Rescue. (*Id.* ¶20)  HealthPort retrieved and furnished the medical bills to Mr. Querubin and Mr. Mirizio and sent each an invoice charging $8.00 for this one page copy of

---

[3]  In some instances an authorized attorney may request the copies directly from Healthport. (Amended Compl. ¶ 4)

[4]  Contrary to the Defendants' assertion in their Motion, the Plaintiffs do not allege that either Mr. Querubin or Mr. Mirizio requested "all medical treatment rendered."  In fact, paragraphs 13 and 20 of the Amended Complaint allege that Mr. Querubin and Mirizio requested "a complete itemized bill."  Defendants' citations are to the now inoperative original Complaint.

Case No. 09-21321-Civ-Ungaro/Simonton

medical records.  (*Id.* ¶¶15,22)  The $8.00 charge breaks down as follows: (1) a $4.00 Basic Fee; (2) a $1.00 Retrieval Fee; (3) a $1.00 Per Page Copy Fee; and (4) a $2.00 QuickView Delivery Fee.  (*Id.* ¶¶16,23)  This $8.00 charge amounts to $7.00 more than the maximum $1.00 per-page charge permitted by Florida law for copies of patient medical records.  (*Id.* ¶¶16,23)

Ms. Davis and Ms. Castilla both suffered slip and fall accidents causing them serious injuries requiring hospital treatment.  (*Id.* ¶¶25,31)  Ms. Davis received treatment at Parkway Regional Medical Center, which later became part of Jackson North Medical Center.  (*Id.* ¶25)  Ms. Castialla received treatment at Northwest Medical Center.  (*Id.* ¶31)  Both Ms. Davis and Ms. Castilla, through their attorneys, submitted requests for copies of their complete hospital records directly to their treating hospital.  (*Id.* ¶27,33)  On March 21, 2009 Healthport delivered an invoice to Ms. Davis' attorneys charging her $47.00 for copies of thirty-seven (37) pages of medical records.  (*Id.* ¶28)  This charge included: (1) a $10.00 Basic Fee; and (2) a $1.00 Per Page Copy Fee.  (*Id.* ¶29)  This $47.00 charge amounts to $10.00 more than the maximum amount permitted by Florida law.  (*Id.* ¶29)  On March 6, 2009, Healthport delivered an invoice to Ms. Castilla's attorneys charging her $24.00 for copies of twenty-one (21) pages of medical records.  (*Id.* ¶34)  This charge included: (1) a $1.00 Basic Fee; (2) a $1.00 Per Page Copy Fee; and (3) a $2.00 Quick View Delivery Fee.  (*Id.*¶35)  This $24.00 charge amounts to $3.00 more than the maximum amount permitted by Florida law.  (*Id.* ¶35)

Case No. 09-21321-Civ-Ungaro/Simonton

### III.  <u>LEGAL ARGUMENT</u>

Defendants raise four separate arguments in support of their Motion to Dismiss.  Only one of these claims would dispose of the Plaintiffs' entire Amended Complaint.  Defendants first argue that Mr. Querubin and Mr. Mirizio cannot state a claim because they requested their medical records from emergency medical services providers rather than directly from their treating hospitals.  Second, Defendants argue that Mr. Querubin and Mr. Mirizio fail to state a claim because the medical bills that they requested do not constitute medical records.  Third, Defendants argue that the additional "Basic Fees" and "Quickview Deliver Fees" that Ms. Davis and Ms. Castilla were charged were lawful under exceptions to Fla. Stat. § 305.3025.  Finally, Defendants argue that all Plaintiffs fail to state a claim because Florida Statute § 395.3025 does not contain a private right of action.  For the following reasons, each of the Defendants arguments is fatally flawed and accordingly Defendants' Motion to Dismiss should be denied.

### A.  MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss is to determine whether a complaint properly states a cause of action upon which relief can be granted.  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).  In making that determination, the court must confine its review to the four corners of the complaint and "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001).  Thus, on a motion to dismiss the plaintiff is only required to plead enough facts to "raise a reasonable expectation that discovery" will support its claims.  *Twombly*, 127 S.Ct. at

Case No. 09-21321-Civ-Ungaro/Simonton

1965.  Accepting the complaint's allegations as true, the question the trial court must decide is whether the plaintiff is entitled to the relief requested.  *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1154 (9th Cir. 2000).

### B.  THE AMENDED COMPLAINT CLEARLY STATES A CLAIM OF RELIEF UNDER FDUPTA

The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.  At base, this case is about stopping the Defendants price gauging practices by systematically overcharging consumers for copies of their medical records, something most people *need* for one purpose or another.

Contrary to Defendants' position in their Motion to Dismiss, the Plaintiff's FDUPTA claim does not require a finding that the Defendants have violated Fla. Stat. § 395.3025.  *State of Fla. Office of Atty Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005) (an unfair or deceptive practice need not violate a specific rule or regulation to constitute a FDUPTA violation).  The only thing Plaintiffs must show is that the Defendants are engaged in an "unfair method[] of competition, unconscionable act[] or practice[], in the conduct of any trade or commerce.  Fla. Stat. § 501.204.  However, statutory enactments, such as § 395.3025 serve as a reference for what is a reasonable and acceptable price for the particular practice at issue.

In determining what constitutes a violation of FDUPTA, courts in the Southern District have held that "[a] violation of any 'law, statute, rule, or ordinance which proscribes unfair

Case No. 09-21321-Civ-Ungaro/Simonton

methods of competition, or unfair, deceptive or unconscionable practices' is a per se violation of FDUTPA." *Trotta v. Lightouse Point Land Co., LLC,* 551 F. Supp. 2d 1359, 1367 (S.D. Fla. 2008) (quoting Fla. Stat. § 501.203(3)(c)).  Section 395.3025 of the Florida Statutes specifically provides that:

> The exclusive charge for copies of patient records may include sales tax and actual postage, and, except for nonpaper records that are subject to a charge not to exceed $2, may not exceed $1 per page.

Fla. Stat. § 395.3025.  Florida courts interpreting this section have held that "section 395.3025(1) require[s] [Defendant copy service] to charge no more than $1 per page for copies of medical records requested by former patients. . . ."*Hosp. Correspondence Corp. v. McRae*, 682 So.2d 1177, 1182 (Fla. 5th DCA 1996).  Accordingly, because Defendants are violating a state law proscribing an unfair and unconscionable practice, not only do the Plaintiffs state a claim under FDUPTA, they also allege a *per se* violation. *Trotta,* 551 F. Supp. 2d at 1367.  Accordingly, for these and the following reasons, the Defendants' Motion to Dismiss must be denied.

## C.   FLORIDA STATUTE § 395.3025 COVERS EMERGENCY MEDICAL SERVICES PROVIDERS

In their motion, Defendants argue that because Mr. Mirizio and Mr. Querubin made their patient medical requests directly to an emergency medical services provider rater than to the hospital that the emergency medical services provider transported them to, that the Plaintiffs' requests are not covered under § 395.3025.  This argument does not address the claims of Ms. Davis and Ms. Castilla, because they requested their medical records directly from their treating

Case No. 09-21321-Civ-Ungaro/Simonton

hospital.  The text relied on by Defendants reads as follows:

> Any licensed facility shall, upon written request . . . furnish, in a timely manner. . . a true and correct copy of all patient records. . . .   The exclusive charge for copies of patient records may include sales tax and actual postage, and, except for nonpaper records that are subject to a charge not to exceed $2, may not exceed $1 per page. . . .

Fla. Stat. § 395.3025(1).  As Defendants point out, "licensed facility" is a defined term which "means a hospital, ambulatory surgical center, or mobile surgical facility licensed in accordance with this chapter." Fla. Stat. § 395.002(16).  According to the Defendants, this proves that the Plaintiffs' requests are not covered by § 395.3025 because emergency medical services providers are not explicitly listed in this definition.

What Defendants overlook, however, is that under the Florida legislature's comprehensive scheme, emergency medical services providers are merely an extension of trauma center hospitals.  For example, emergency medical services providers are regulated under § 395.4045, which requires emergency medical services providers to transport all trauma alert victims to hospitals approved as trauma centers. Fla. Stat. § 395.4045(1).  This same section also requires coordination between these trauma centers and emergency medical service providers to develop a uniform trauma transport protocol.  Fla. Stat. § 395.4045(2).  Section 395.1031 further reinforces the interrelated nature of emergency medical services providers and hospitals by requiring each licensed hospital with an emergency department to maintain specific effective communication devices.  However the clearest legislative intent for emergency medical service providers to be covered by the substantive portions of Fla. Stat. § 395.3025 is explicit.  Section

Case No. 09-21321-Civ-Ungaro/Simonton

395.3041 specifically provides that "[e]ach emergency medical services provider licensed under chapter 401 **must comply with all sections of this act** by July 1, 2005." Fla. Stat. § 395.3025 (emphasis provided). As Defendants concede in their Motion to Dismiss, emergency medical services providers are licensed and regulated under Chapter 401 and are therefore bound to comply with all provisions of Chapter 395.

In addition to the extensive and explicit regulation of emergency medical services providers under Chapter 395, Fla. Stat. § 401. 265(1) requires emergency medical transportation services to contract with or employ a medical director, who may be "a physician[] employed by any hospital that delivers in-hospital emergency medical services. . . ." A later subsection requires each medical director to "establish a quality assurance committee to provide for quality assurance review of all emergency medical technicians and paramedics operating under his or her supervision." Fla. Stat. § 401.265(2). The extensive regulation of emergency medical services and interrelation between emergency medical services and trauma center hospitals shows that with respect to Fla. Stat. § 395.3025 emergency medical services providers, such as those that Mr. Querubin and Mr. Mirizio requested their medical records from, are merely an extension of a hospital trauma center and are explicitly required to comply with all portions of Chapter 395.

Furthermore, even assuming *arguendo* that emergency medical services providers were not covered under the definition of "licensed facilities," the result advanced by the Defendants creates an anomalous result that could not have been intended by the legislature. Section

Case No. 09-21321-Civ-Ungaro/Simonton

395.1041 requires hospitals to "maintain records of each transfer made or received," from an emergency medical services provider.  This means that a hospital and an emergency medical services provider are both required to maintain an identical record on the transportation services rendered.  Because, as even the Defendants admit, § 395.3025 clearly limits the amount that a hospital can charge for copies of patient medical records, the Defendants' suggested result would allow for dramatically different prices to be charged for the retrieval and duplication of an identical record, which in all likelihood would be furnished by the same external copy service, in this case, Healthport.  This simply cannot be the result that the legislature intended and it is not a result that a reasonable interpretation of the statute requires.

Finally, *even if* the Court were to accept Defendants' argument that Fla. Stat. § 395.3025 does not cover emergency medical services providers, this does not defeat the Plaintiffs' claims. While violation of a statute that "'proscribes unfair methods of competition, or unfair, deceptive or unconscionable practices'" constitutes a *per se* violation of FDUTPA, *Trotta v. Lighthouse Point Land Co., LLC*, 551 F. Supp. 2d 1359, 1367 (S.D. Fla. 2008) (quoting Fla. Stat. § 501.203(3)(c)), an unfair or deceptive practice need not violate a specific rule or regulation to constitute a FDUPTA violation, *State of Fla. Office of Atty Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).  On this point, *Ford v. ChartOne*, 908 A.2d 72 ( D.D.C. 2006), is particularly illustrative.

In *Ford*, the plaintiffs alleged that ChartOne, was charging a fee of $1.10 per page, plus a $25.00 "clerical fee," in addition to various other taxes and shipping fees.  *Id.* at 78.  D.C. did

Case No. 09-21321-Civ-Ungaro/Simonton

not, at the time, impose any statutory limitation on fees for copies of patient medical records. However, this did not preclude the plaintiffs in *Ford* from stating a claim under D.C.'s unfair and deceptive trade practices law.  Plaintiffs compared the prices that the defendant charged in the District with the same company's much lower rates in the surrounding states and used the disparity to demonstrate the unfair and deceptive nature of the inflated prices in the District.  *Id.* Similarly, *even if* the Defendants were correct and § 395.3025 did not apply to the Plaintiffs' claims, in determining whether the Defendants violated FDUPTA, the Court can consider the fact that Defendants admittedly charge substantial additional fees to patient/consumers who request their medical fees from emergency medical services providers rather than their healthcare provider, even though Healthport provides identical services to each.  Accordingly, the Defendants' Motion to Dismiss must be denied.

### D.  THE "ITEMIZED BILLS" REQUESTED BY PLAINTIFFS ARE "PATIENT RECORDS" UNDER FLORIDA STATUTE § 395.3025

In the second section of their Motion, Defendants argue that a medical "bill" is not a patient medical record.  This argument is directed only at the claims of Mr. Querubin and Mr. Mirizio and does not affect the claims of Ms. Davis and Ms. Castilla because they requested copies of their complete hospital records.  Defendants do not cite any authority for the proposition that the medical bills are not covered except for § 395.3025 itself and Fla. Stat. § 395.3015, which by its terms, applies only to hospitals "operated by the [Agency for Health Care

Case No. 09-21321-Civ-Ungaro/Simonton

Administration] or by the Department of Corrections."[5]   However, the plain language of the statute expressly includes "insurance information" within the definition of "medical records," Fla. Stat. § 395.3025, and insurance information clearly includes billing information.  Medical records and medical bills are inextricably linked in patient care, and such bills are especially important in submitting and being reimbursed for a medical insurance claim.

### E.  MS. DAVIS AND MS. CASTILLA WERE OVERCHARGED UNDER FLA. STAT. § 395.3025

   a.  Fla. Stat. § 395.3025 does not permit a $1.00 charge for every year of medical records "searched"

Defendants' claim that an additional $1.00 fee can be charged for each year of medical records "searched" requires a completely twisted reading of the statute.  This claim is especially egregious considering that a Florida court already rejected a materially indistinguishable argument in a case against one of Healthport's predecessor entities, ChartOne.  *Lavoie v. Quadramed Corp.*, No. 00-1625-CA-G, slip op. at 2 (Fla. Cir. Ct. Apr. 3, 2007).[6] The statute states that "a fee of up to $1.00 may be charged for each year of records requested."  Fla. Stat. § 395.3025.   To construe this as permitting a $1.00 fee for every year "searched" could

---

[5] Neither Palm Beach Gardens Medical Center nor North Broward Medical Center is owned or operated by the Agency for Health Care Administration or the Department of Corrections.  Palm Beach Gardens Medical Center is owned and operated by the Tenet Heathcare Corporation and North Broward Medical Center is one of the many healthcare facilities operated by the Broward Health public healthcare system.

[6] We have been unable to obtain a signed copy of this Order up to this point, however counsel for the plaintiff in *Lavoie* has represented that this Order was signed on April 3, 2007. *See also* Plaintiff's Motion for Summary Judgment *Lavoie*, No. 00-1625-CA-G (Fla. Cir. Ct. Jan. 2008) (citing to the prior Partial Summary Judgment Order), Exhibit E.

Case No. 09-21321-Civ-Ungaro/Simonton

theoretically allow a licensed provider to charge $1.00 for each year of a patient/consumer's life if she requested "all" of her medical records.  Thus a seventy-two year old woman could be charged $73.00 for one page of medical records if she requested her complete file, and that file consisted of just one page.  This contention was squarely rejected in a prior suit brought against ChartOne, now part of Healthport.  *Lavoie v. Quadramed Corp.*, No. 00-1625-CA-G, slip op. at 2 (Fla. Cir. Ct. Apr. 3, 2007).  In *Lavoie,* the court held that:

> ChartOne's practice of charging a $1.00 fee for each year of records requested when records are not furnished to the records requester for each year requested violates Section 395.3025(1), *Florida Statutes*, because the $1.00 fee 'for each year of records requested' only authorizes a fee for each year requested for which records are actually furnished to the records requester.

Accordingly, Defendants cannot justify the unconscionable practice of charging additional fees for all years that patient/consumers have been alive, when no records are provided for those years.  This issue has already been decided.

      b.   Fla. Stat. § 395.3025 regulates records requests that are made electronically

Defendants rely on the portion of § 395.3025 that provides: "The exclusive charge for copies of patient records . . . except for nonpaper records which are subject to a charge not to exceed $2.00 . . . may not exceed $1.00 per page."  Healthport argues this language permits it to charge a $2.00 "QuickView Delivery Fee" in addition to the $1.00 per page fee for each "page" of records requested.[7]   This is a blatant misreading of the statute.  The language of the statute

---

[7] Defendants also argue that this charge is permissible because Ms. Castilla consented to it.  However, Ms. Castilla cannot consent to a violation of Florida law.

Case No. 09-21321-Civ-Ungaro/Simonton

quantifies nonpaper copies in terms of "requests" rather than pages.  *See* Fla. Stat. § 395.3025.  A proper reading of the statute allows for a $2.00 fee per records *request* rather than an additional fee on top of the per page charge that would be permissible in the case of a conventional paper records request.

In *Hospital Correspondence Corp. v. McRae*, ChartOne, now part of Healthport, argued that it was permitted to charge up to $2.00 per page of records that were electronically stored. 682 So. 2d 1177, 1178 (5th DCA 1996).  In rejecting this argument,[8] the court elaborated on what constitutes a "nonpaper copy."  The court held that the nonpaper "differentiate[s] between charges based not on the medium of the source record, but on the form of the reproduction actually purchased." *Id.* at 1181.  The statutory language clearly and unambiguously states that "nonpaper records . . . are subject to a charge not to exceed $2."    Accordingly, *at most*, Defendants might be able to argue that they can charge Ms. Castilla $2.00, however, the statute certainly does not support a charge of $24.00 for one nonpaper medical records request.

c.  <u>A motion to dismiss is not the proper place for factual arguments, such as those that the Defendants make in their Motion to Dismiss</u>

Furthermore, the denial of the Defendants' Motion is also warranted because the crux of their argument is factual, not legal, and is therefore inappropriate at the Motion to Dismiss stage. *See Wright v. King*, No. 3:06-cv-860-J-16HTS, 2007 WL 80844, at *2 (M.D. Fla. Jan. 8, 2007). Such arguments are more appropriately raised on a Motion for Summary Judgment or at trial.  In

---

[8] The *McRae* court held that charges for *all* paper copies "regardless of whether the source of the copies was paper, microfilm or microfiche" are limited to $1.00 per page.  682 So. 2d at 1182.

Case No. 09-21321-Civ-Ungaro/Simonton

their Motion, Defendants argue that the extra fees charged to Ms. Davis and Ms. Castilla fall under various exceptions to the $1.00 per page copy-charge limit proscribed by Fla. Stat. § 395.3025.  Defendants argue that the charges listed as "Basic Fees" correspond to an additional fee of $1 per year of records searched.  They further argue that the "QuickView Delivery Fee" corresponds to additional charges for electronic delivery of the patient's requested records.  However, a Motion to Dismiss is not the place for such factual arguments.

Additionally, the itemized bills provided by Healthport to the Plaintiffs do not identify what the individual charges are for.  Simply because the Defendants state in a conclusory fashion that these additional charges fit within the strictures of § 395.3025 does not establish as a *factual* matter that these fees were actually charged for the reasons claimed by the Defendants.  The court in *Raglon v. ChartOne*, No. CV-06-276-1, slip op. at 13-15 (Ark. Cir. Ct. July 5, 2007), addressed this precise point in an Order certifying a class of consumers against ChartOne who alleged that they had been charged inflated process under Arkansas law.  In *Raglon*, the court noted that the evidence showed that ChartOne's computer software would bundle impermissible charges under the headings for otherwise permissible charges.  *See id.* at p.15.  It also found significant the fact that "ChartONE's customers do not know what the 'base fee' or 'clerical fee' charges are for."  *Id.*  The same is true here.  Through discovery, Plaintiffs will determine what the charges under the various listings on each invoice actually represents.  However, at this stage in the proceedings, simply because the Defendants allege that the additional charges paid by Ms. Davis and Ms. Castilla were for either "each year searched" or for electronic delivery, does not

Case No. 09-21321-Civ-Ungaro/Simonton

make it so for purposes of a motion to dismiss.  Accordingly, the Court here, as in *Raglon*, should treat this, at best, as a factual defense to be raised at a later time.  *Id.* at p. 23.

### F.  PLAINTIFFS' FDUPTA AND UNJUST ENRICHMENT CLAIMS DO NOT REQUIRE A PRIVATE RIGHT OF ACTION TO STATE A CLAIM.

Finally, Defendants argue that because in 2004 the Florida legislature adopted an amendment note to Fla. Stat. § 395.3025 stating that "[n]othing in this act shall be construed to create or be the basis of a civil action," that the Plaintiffs' FDUPTA and unjust enrichment claims must fail.  This precise issue has already been decided by this court.  In *Rosen v. J.M. Auto Inc.*, No. 07-61234-CIV-WPD, slip op. at p. 3 (S.D. Fla. Mar. 6, 2008) Exhibit F, the defendant moved to dismiss the plaintiff's FDUPTA claim, which was based on a violation of a provision of the National Traffic and Motor Vehicle Safety Act ("Safety Act"), because the Safety Act did not provide a private right of action.  The *Rosen* court found that because there was no showing that the federal Safety Act preempted common or statutory state law, that despite the lack of a private cause of action, the state common law and FDUTPA claims survived.  *Id.* at p. 8 ("While the lack of a private cause of action prevents the Plaintiffs from bringing a federal claim under the statute, the savings clause permits states to enforce the standards via their common law and [FDUPTA] regulations . . . .")  The end result here must be the same and both the Plaintiffs' FDUPTA and Unjust Enrichment claims must survive.

The *Rosen* case demonstrates how Defendants' argument misses the point.  The Plaintiffs are not suing directly under § 395.3025, but rather are suing under the private cause of action

Case No. 09-21321-Civ-Ungaro/Simonton

*created* by FDUPTA.  Fla. Stat. § 501.211(2) ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs").  As the court held in *Hunter v. Bev Smith Ford, LLC*, No. 07-80665-CIV, 2008 WL 1925265, at *7 (S.D. Fla. April 29, 2008), "[t]his law was created with the intention of providing Florida consumers with a simplified statutory cause of action that provides additional remedies to recover economic damages incurred as a result of a product or service purchased where the seller used unfair or deceptive practices or acts."  FDUPTA is designed to provide consumer protection that is *supplemental* to those remedies, or lack of remedies, permitted under state or local law.  Fla. Stat. § 501.213(1) ("The remedies of this part are in addition to remedies otherwise available for the same conduct under state or local law."); *Pinellas County Dep't of Consumer Affairs v. Castle*, 392 So. 2d 1292 (Fla. 1981).

Furthermore, as already explained, although proving a violation of a state or local law can serve as the basis to show a *per se* violation of FDUTPA, *Trotta*, 551 F. Supp. 2d at 1367 (quoting Fla. Stat. § 501.203(3)(c)), an unfair or deceptive practice need not violate a specific rule or regulation to constitute a FDUPTA violation, *State of Fla. Office of Atty. Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).  Accordingly, the Plaintiffs' claims cannot be said to be based on or created by the Florida statute.  Indeed, in *Ford v. ChartOne*, 908 A.2d 72, 78 (D.C. 2006), the plaintiff made exactly this claim: that the amount he was charged for copies of patient medical records was so high as to be unconscionable.  In this case, the Plaintiffs' claims are ultimately based on the fact that the Defendants' practice is unfair,

Case No. 09-21321-Civ-Ungaro/Simonton

oppressive, misleading, and deceptive.  That this conduct is also prohibited by law merely serves as an illustration and reinforcement of the unlawful, unfair, and deceptive nature of the Defendants' practice.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, the Defendants' Motion to Dismiss the Amended Complaint [DE 21] must be denied.

Respectfully submitted this 21st day of July, 2009.

GLINN SOMERA & SILVA
Paul M. Silva, Esq.
Florida Bar No. 319820
Peter J. Somera, Esq.
Florida Bar No. 54267
Somera Silva Building
212 N. Federal Highway
Deerfield Beach, Florida 33441
T: (954) 426-5553 / F: (954) 426-6646

SEARCY, DENNEY, SCAROLA
 BARNHART & SHIPLEY, PA
John Scarola, Esq.
Florida Bar No. 169440
William B. King, Esq.
Florida Bar No. 181773
2139 Palm Beach Lakes Blvd. 33409-6601
West Palm Beach, Florida
T: (561) 686-6300 / F. (561) 684-5816

/s/Adam M. Moskowitz
Adam M. Moskowitz, Esq.
Florida Bar No. 984280
KOZYAK TROPIN &
THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: 305-372-1800/Fax: 305-372-3508

COUNSEL FOR PLAINTIFF

Case No. 09-21321-Civ-Ungaro/Simonton

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on July 21, 2009 and was filed with the Clerk of the Court using CM/ECF.

/s/Adam M. Moskowitz

303195