**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NUMBER:  09-CV-21321-UNGARO**

JUAN QUERUBIN, VINCENT
MIRIZIO, CHERYL DAVIS, and
ROSA CASTILLA, individually
and on behalf of all others
similarly situated,

        Plaintiffs,

vs.

HEALTHPORT INCORPORATED, and
HEALTHPORT TECHNOLOGIES, LLC.,
Both d/b/a HEALTHPORT,

        Defendant.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**DEFENDANTS' SECOND RENEWED MOTION TO STAY DISCOVERY**

Plaintiffs hereby respond in opposition to Healthport, Inc. and Healthport

Technologies, LLC's (collectively "Healthport") Second Renewed Motion to Stay

Discovery, filed on July 15, 2009 [DE 22], which incorporates by reference its original

Motion to Stay Discovery filed on June 22, 2009 [DE 10].

**BRIEF FACTUAL BACKGROUND**

Plaintiffs filed the initial Complaint on May 15, 2009 alleging two counts: (1)

violations of the Florida Unfair and Deceptive Trade Practice Act ("FDUPTA"); and (2)

Unjust Enrichment [DE 1].  On June 10, 2009, the day before Defendants' responsive

pleading was due, Defendants' counsel requested an extension  of more than a month

until July 13, 2009 within which to respond.  Plaintiffs agreed.

CASE NUMBER:  09-CV-21321-UNGARO

Moreover, Plaintiffs attempted to conduct the joint scheduling conference on numerous occasions but Defendants' counsel had to continue and postpone the meeting several times due to their own scheduling conflicts.  The parties held their initial S.D. Fla. L.R. 16.1(B) meeting and Plaintiffs served Defendants very narrow and specific initial discovery (four interrogatories, five document requests and two depositions).  The parties met several additional times on the telephone, and filed their Joint Scheduling Report on July 2, 2009 [DE 15].

On June 22, 2009 the Defendants filed their Motion to Dismiss the Complaint [DE 9] and their Motion to Stay Discovery [DE 10].  The Court initially denied the Defendants' Motion to Stay Discovery [DE 14] on June 24, 2009 because the Defendants omitted the fact that the parties had already held their initial scheduling meeting. Defendants renewed their Motion to Stay Discovery on July 6, 2009, this time accurately representing that the initial scheduling conference had already taken place [DE 16]. Plaintiffs filed an Amended Complaint [DE 17] on July 8, 2009, adding two additional Plaintiffs, Ms. Davis and Ms. Castilla.  As shown in the response to the Motion to Dismiss, all of the clients have valid claims against Defendants.   The Defendants withdrew their Motion to Dismiss [DE 18] and re-filed it on July 14, 2009 [DE 21]. Defendants filed the instant Second Renewed Motion to Stay Discovery [DE 22] the next day on July 15, 2009.  This Motion is simply a restatement of their initial Motion to Stay.

Most recently, on July 17, 2009 –  three days after filing their Second Motion to Dismiss – Defense counsel sent Plaintiffs' counsel a letter threatening Rule 11 sanctions if Plaintiff did not immediately withdraw this action stating that there was no basis for any of these claims.  *See* Letter, Exhibit A.

CASE NUMBER:  09-CV-21321-UNGARO

Plaintiffs respectfully ask the Court to deny Defendants' Second Renewed Motion to Stay, which is merely another attempt, at this early stage in this litigation, to impede the progress of the Plaintiffs' meritorious claims in any manner possible.   The Defendants' request is not supported by either the law, or the particular facts and circumstances of this case.

## LEGAL ARGUMENT

### A.      Healthport has not shown "good cause" for a stay of discovery.

Healthport offers little support for why the Court should stay all discovery during the pendency of its motion to dismiss.  While Fed. R. Civ. P. 26(c) grants the Court discretion to stay discovery pending resolution of a Motion to Dismiss, such stays are disfavored.  *See Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) ("a request to stay all discovery pending resolution of a motion to dismiss is rarely appropriate"); *see also* S.D. Fla. L.R. App. A. Discovery Practices Handbook (I)(D)(5) ("Normally, the pendency of a motion to dismiss or a motion for summary judgment will not justify a unilateral motion to stay discovery pending a ruling on the dispositive motion.")  To obtain a stay, Healthport must make a specific showing of "good cause and reasonableness."  *Bocciolone v. Solowsky*, No. 08-20200-CIV, 2008 WL 2906719 at * 2 (S.D. Fla. July 24, 2008); *Espinosa v. Pac. Life Ins. Co.*, No. 1:07-cv-20936-ASG, slip op. at 2 (S.D. Fla. 2009).

Healthport's only attempt to demonstrate "good cause" in this case is through a statement that its motion to dismiss will, if granted, dispose of the entire Complaint. However, the mere filing of a motion to dismiss coupled with the argument that the motion will resolve the entire case does not justify a stay of discovery under Florida law.

*See Bocciolone*, 2008 WL 2906719 at \*2; S.D. Fla. L.R. App. A. ("Such motions for stay are generally denied except where a specific showing of prejudice or burdensomeness is made, or where a statute dictates that a stay is appropriate or mandatory.")

The cases cited by the Defendants are not to the contrary, these cases merely establish that under certain circumstances a defendant may show "good cause" to stay discovery while a dispositive motion is pending.  In the cases cited by Defendants, one court stayed discovery pending a motion to dismiss a "frivolous" complaint by a "prolific litigator." *Allmond v. Duval County*, No. 3:08-cv-486-J-34TEM, 2008 WL 4833099 at \*2 (M.D. Fla. Nov. 5, 2008).  The other stayed a case pending disposition of a motion to dismiss a "shotgun complaint" containing "a fraud count that is novel and of questionable validity." *Chaudsma v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997).[1] Moreover, the discovery actually propounded in this case is extremely narrow and Defendants have not, and cannot make any showing that it is burdensome and/or oppressive.

As discussed in Section B below, the Amended Complaint in this case states a valid claim for relief under FDUPTA and for Unjust Enrichment, accordingly, the Defendants' Motion will eventually be denied on the merits and any stay imposed will only delay the progress of this litigation.  Because the Defendants have not met their burden of making a "specific showing of prejudice or burdensomeness," *Bocciolone*, 2008 WL 2906719 at \*2 (quoting S.D. Fla. L.R. App. A. Discovery Practices Handbook

---

[1] The only other case cited by the Defendants, *Staup v. Wachovia Bank, N.A.*, No. 08-60359-CIV, 2008 WL 1771818 (S.D. Fla. Apr. 16, 2008), is less than one page long and contains next to no substantive legal analysis.  Accordingly, the only proposition it can possibly stand for is that a court always retains the discretion under appropriate circumstances to stay discovery under Fed. R. Civ. P. 26(c).

CASE NUMBER:  09-CV-21321-UNGARO

I(D)(5)), their Second Renewed Motion to Stay Discovery should be denied.

**B.     The merits of Defendants' Motion and the history of nationwide litigation against Defendants weigh against granting the Defendants' Motion**

   **1.  <u>Defendants' Motion to Dismiss is meritless.</u>**

As more comprehensively set forth in the Plaintiffs' Response to the Defendants' Motion to Dismiss, filed contemporaneously with the instant Response, the Defendants' Motion to Dismiss is baseless.  A preliminary "peek" into the merits of the Motion shows that all of the Plaintiffs' claims will survive.  Only one of the Defendants' challenges to the Amended Complaint even purports to pose a facial challenge.  If successful, the Defendants' claim that Fla. Stat. § 395.3025 precludes *any* private right of action for unfair and deceptive charges for copies of patient medical records could dismiss the entire Amended Complaint.  However, as discussed more fully in the Response to Defendants' Motion to Dismiss, because FDUPTA provides a private right of action that is *in addition* to any available state or local remedies, this argument must fail.  *See Rosen v. J.M. Auto Inc.*, No. 07-61234-CIV-WPD, slip op. at p. 3 (S.D. Fla. Mar. 6, 2008), Exhibit B.  Accordingly, the Defendants only facial attack on the Amended Complaint is fatally flawed.

The remainder of Defendants' challenges to the Amended Complaint are piecemeal attacks on the claims of individual Plaintiffs.  Defendants first attack the claims of Mr. Querubin and Mr. Mirizio arguing that: (1) emergency medical services providers are not covered by Fla. Stat. § 395.3025; and (2) medical bills are not medical records as contemplated by § 395.3025.  However, although the Plaintiffs argue, and the law supports, that both emergency medical services providers and medical bills fall

within the ambit of § 395.3025, *even if* they did not, the Plaintiffs still state a claim sufficient to survive a motion to dismiss.

While a violation of a statute that "'proscribes unfair methods of competition, or unfair, deceptive or unconscionable practices'" constitutes a *per se* violation of FDUTPA, *Trotta v. Lighthouse Point Land Co., LLC*, 551 F. Supp. 2d 1359, 1367 (S.D. Fla. 2008) (quoting Fla. Stat. § 501.203(3)(c)), an unfair or deceptive practice need not violate a specific rule or regulation to constitute a FDUPTA violation, *State of Fla. Office of Atty Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005).  On this point, *Ford v. ChartOne*, 908 A.2d 72 (D.D.C. 2006), is particularly illustrative.

In *Ford*, the plaintiffs alleged that ChartOne, was charging a fee of $1.10 per page, plus a $25.00 "clerical fee," in addition to various other taxes and shipping fees. *Id.* at 78.  D.C. did not, at the time, impose any statutory limitation on fees for copies of patient medical records.  However, this did not preclude the plaintiffs in *Ford* from stating a claim under D.C.'s unfair and deceptive trade practices law.  Plaintiffs compared the prices that the defendant charged in the District with the same company's much lower rates in the surrounding states and used the disparity to demonstrate the unfair and deceptive nature of the inflated prices in the District.  *Id.*  Similarly, *even if* the Defendants were correct and § 395.3025 did not apply to the Plaintiffs' claims, in determining whether the Defendants violated FDUPTA, the Court can consider the fact that Defendants admittedly charge substantial additional fees to patient/consumers who request their medical fees from emergency medical services providers rather than their healthcare provider, even though Healthport provides identical services to each.

Next, Defendants attack the claims of Ms. Davis and Ms. Castilla claiming that:

CASE NUMBER:  09-CV-21321-UNGARO

(1) a $2.00 "QuickView Delivery Fee," *in addition* to the $1.00 per-page charge, is permissible when medical records are provided in a nonpaper format; and (2) an additional $1.00 charge in the form of a "Basic Fee" is permissible for each year of medical records "searched" rather than for each year of medical records provided. Neither of these claims is supported by either the plain language of the statute or the case law interpreting it.

Defendants rely on the portion of § 395.3025 that provides: "The exclusive charge for copies of patient records . . . except for nonpaper records which are subject to a charge not to exceed $2.00 . . . may not exceed $1.00 per page."  Healthport argues this language permits it to charge a $2.00 "QuickView Delivery Fee" in addition to the $1.00 per page fee for each "page" of records requested.   This is a blatant misreading of the statute.  The language of the statute quantifies nonpaper copies in terms of "requests" rather than pages.  *See* Fla. Stat. § 395.3025.  A proper reading of the statute allows for a $2.00 fee per records *request* rather than an additional fee on top of the per page charge that would be permissible in the case of a conventional paper records request.   The statutory language clearly and unambiguously states that "nonpaper records . . . are subject to a charge not to exceed $2."   Accordingly, *at most*, Defendants might be able to argue that they can charge Ms. Castilla $2.00, however, the plain language of the statute simply does not support a charge of $24.00 for a single nonpaper medical records request.

Finally, the claim that an additional $1.00 fee can be charged for each year of medical records "searched" is a completely twisted and unsupportable reading of the statute.  This claim is especially egregious considering that a Florida court already

rejected a materially indistinguishable argument in a case against one of Healthports'

predecessor entities, ChartOne.  *Lavoie v. Quadramed Corp.*, No. 00-1625-CA-G, slip

op. at 2 (Fla. Cir. Ct. Apr. 3, 2007), Exhibit C.[2]  The statute states that "a fee of up to

$1.00 may be charged for each year of records requested."  Fla. Stat. § 395.3025.  To

construe this as permitting a $1.00 fee for every year "searched" could theoretically allow

a licensed provider to charge $1.00 for each year of a patient/consumer's life if she

requested "all" of her medical records.  Thus a seventy-two year old woman could be

charged $73.00 for one page of medical records if she requested her complete file, and

that file consisted of just one page.  This contention was squarely rejected in a prior suit

brought against ChartOne, now part of Healthport.  *See Lavoie,* No. 00-1625-CA-G, slip

op. at 2. In *Lavoie,* the court held that:

> ChartOne's practice of charging a $1.00 fee for each year of records requested
> when records are not furnished to the records requester for each year requested
> violates Section 395.3025(1), *Florida Statutes*, because the $1.00 fee 'for each
> year of records requested' only authorizes a fee for each year requested for which
> records are actually furnished to the records requester.

This precise argument is raised by the Defendants in this case.  Accordingly, because the

Defendants have not shown any likelihood of success on the merits of their Motion to

Dismiss, a stay of discovery is particularly inappropriate in this case.

**2.      History suggests a pattern of abuse by Defendants and their predecessor entities that must be stopped.**

Through a preliminary review of available pleadings and discussions with counsel

in various cases, undersigned counsel has been informed that, contrary to the impression

---

[2] We have been unable to obtain a signed copy of this Order up to this point, however counsel for the Plaintiff has represented that this Order was signed on April 3, 2007. *See also* Plaintiff's Motion for Summary Judgment *Lavoie*, No. 00-1625-CA-G (Fla. Cir. Ct. Jan. 2008) (citing to the prior Partial Summary Judgment Order), Exhibit D.

Healthport seeks to portray before the Court, numerous class actions have been filed in at least three different states against ChartOne, a company HealthPort recently merged with. Plaintiffs have already requested all such pleadings from HealthPort, many of which are unpublished, and are also independently attempting to gather them from available sources.  These class actions all settled after the courts rejected the defenses raised by Defendants.  Many of these rejected defenses are either similar or identical to the defenses raised by Healthport in this case.

For example, in Arkansas, ChartOne was sued in a state-wide class action under the Arkansas deceptive practices law. *Raglon v. ChartOne*, No. CV-06-276-1 (Ark. Cir. Ct. Am. Compl. filed Feb. 1, 2007).  The class alleged that the company exceeded the permissible charges for medical records under state law and thus brought suit under the state's deceptive trade law.  In denying ChartOne's defenses, and in certifying the case, the court found that ChartOne's automatic computer system was set up to charge customers more for copies of medial records than the amounts permitted by law.  *See Raglon*, No. CV-06-276-1, slip op. at 13-15 (Ark. Cir Ct. July 5, 207), Exhibit E.  The Supreme Court of Arkansas upheld the trial court's certification order for the state-wide class. *See ChartOne v. Raglon*, No. 07-940 (Ark. Apr. 24, 2008), Exhibit F.  According to counsel, ChartOne settled the case two weeks prior to trial.

In Florida, ChartOne has also been sued in numerous class actions involving similar issues.  Ocala attorney Dock Blanchard, Esq. brought multiple lawsuits including one in Marion County Florida.  *See Lavoie v. ChartOne*, Case No. 00-1625-CA-G (Fla. Cir. Ct. filed 2000).  Plaintiffs are in the process of obtaining all of the unpublished pleadings from these prior cases.  According to Mr. Blanchard, some of the allegations

CASE NUMBER: 09-CV-21321-UNGARO

and defenses raised in this case are similar or identical to the claims and defenses raised in his class actions that were certified by the court. *See Lavoie,* No. 00-1625-CA-G, slip op. at 2 (Fla. Fir. Ct. Apr. 3, 2007).

Finally, in California, ChartOne was sued in class actions including *Reece v. ChartOne*, No. GIC864155 (Cal. Sup. Ct. filed Apr. 13, 2006). The *Reece* plaintiffs alleged that ChartOne charged fees for medical records in excess of those permitted under California state law. The *Reece* class action was certified by the court and ChartOne eventually settled. *See Reece,* Case No. GIC864155, slip op. at 6 (Cal. Sup. Ct. April 28, 2008), Exhibit G. The instant case, like those that preceded it, has merit, and therefore discovery should proceed according to schedule so that the Defendants' unlawful practice can finally be put to an end.

C.  **Plaintiffs have served very narrow discovery requests so that the burdens of delaying discovery would clearly outweigh any potential benefit.**

The Plaintiffs propounded very narrow and reasonable initial discovery. These initial requests were limited to: (1) a Notice of Taking Deposition of Healthport's 30(b)(6) Representative Specifically on Computer Records, Exhibit H; (2) a Notice of Taking Deposition of Healthport's 30(b)(6) Representative, Exhibit I; (3) Plaintiffs' First Four Interrogatories, Exhibit J; and (4) Plaintiffs' Five Document Requests to Defendants, Exhibit K. The information sought in the Requests is narrow, and the Plaintiffs' anticipate Defendants' responses will consist of a very limited number of documents, along with a few additional spreadsheets of computer generated information. The Plaintiffs served one additional Request for Production on July 20, 2009, Exhibit L,

requesting information regarding prior litigation against Healthport, or its predecessors, alleging unlawful charges for copies of patient medical records.  Most of these materials are unreported and therefore Plaintiffs have to seek them directly from Defendants.

Accordingly, the burden on the Defendants in complying with these requests will be minimal.  Although the Defendants state in a conclusory fashion that there will be no prejudice to the Plaintiffs if the Court grants their Motion, this ignores the fact that the grant of a stay would delay the progress of discovery for months until the Motion is fully briefed and ruled upon by the Court.  As the court held in *Feldman*, these motions "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems."  *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997). In light of the unlikelihood of the success of the Defendants' Motion to Dismiss, any stay of discovery in this case will unnecessarily delay these proceedings, the dates proposed in the parties' Joint Scheduling Report, and the eventual termination of Defendants' ongoing violations of Florida law.

The Rule 30(b)(6) deposition in this case is currently scheduled to take place on July 28, 2009, and the Responses to the initial Requests for Production and Interrogatories are already past due.  Like the filing of a motion for protective order, the filing of a motion to stay does not excuse a party from complying with its discovery obligations. *Jeld-Wen v. Nebula Glass Int'l, Inc.*, No. 05-60860, at *5 (S.D. Fla. May 26, 2007); *see also Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979) (holding that the fact that the court had not ruled on his motion did not relieve a party of his discovery obligations).  While the Plaintiff will certainly work together with the Defendants to re-

set this deposition at a mutually convenient time within the next few weeks, the overdue

documents must be turned over immediately for sufficient review prior to the deposition.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Healthport's Second Renewed Motion to Stay Discovery [DE 22] and permit discovery to

move forward according to schedule as provided in the parties' Joint Scheduling Report

and the Federal Rules of Civil Procedure.

Respectfully submitted this 21st day of July, 2009.

GLINN SOMERA & SILVA
Paul M. Silva, Esq.
Florida Bar No. 319820
Peter J. Somera, Esq.
Florida Bar No. 54267
Somera Silva Building
212 N. Federal Highway
Deerfield Beach, Florida 33441
T: (954) 426-5553 / F: (954) 426-6646

SEARCY, DENNEY, SCAROLA
 BARNHART & SHIPLEY, PA
John Scarola, Esq.
Florida Bar No. 169440
William B. King, Esq.
Florida Bar No. 181773
2139 Palm Beach Lakes Blvd. 33409-6601
West Palm Beach, Florida
T: (561) 686-6300 / F. (561) 684-5816

/s/Adam M. Moskowitz
Adam M. Moskowitz, Esq.
Florida Bar No. 984280
KOZYAK TROPIN &
THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: 305-372-1800/Fax: 305-372-3508

COUNSEL FOR PLAINTIFF

CASE NUMBER:  09-CV-21321-UNGARO

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF  on July 21, 2009  and was filed with the Clerk of the Court using CM/ECF.

/s/Adam M. Moskowitz

303246